## Mehler & Estenkemper *v.* John Ferguson, Jr.

**Innocent Purchaser of Note.**

Where there is an agreement between a debtor and creditor that a note given to evidence the debt shall be paid in lumber, but no mention of this is made in the note, which is a plain note payable in bank, and the note is purchased before maturity for a valuable consideration without notice or knowledge of the agreement as to how it is payable, the innocent holder is protected and may collect it according to its terms.

**Notice of Defense.**

A notice to an assistant cashier of a bank of a defense to a note given before the bank discounts the note is not notice to the bank, where it is shown that neither the president nor cashier had any such notice, and where it is shown that the assistant cashier had no voice in discounting paper, and had not been intrusted with or permitted to discharge any such duty by the bank.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

January 15, 1879.

Opinion by Judge Pryor:

That the appellants were to deliver lumber to Metcalfe sufficient to pay for the property purchâsed is made manifest from the parol proof in the case, as well as the agreement between the parties. At the time the notes were executed they had an account for lumber against him for near $2,000, and if there was no other agreement in regard to the notes or the use of them by Metcalfe than that they were to be discharged in lumber, it is a little remarkable that the

notes upon their face were payable in money, and made negotiable at one of the banks of the city. As ordinarily prudent business men, appellants would have protected themselves by inserting the manner of payment in the body of the note, and this would have been done but for their agreement that Metcalfe might use the notes for his own purposes; and having been paid for his property in lumber, the latter assumed the responsibility of taking the notes up at maturity. The appellants never contemplated paying the notes, but said in effect to Metcalfe by the terms of the agreement he had given them, you can use the notes as you think proper if you will take them up at maturity, and we will pay you in lumber for your property.

Metcalfe's credit was then unquestioned, and the appellants entertained no fears as to their responsibility on the notes. The agreement, after describing the property purchased and the notes given for the purchase money, recites: "I do hereby agree to take out said notes in lumber, and to take up said notes when due and to deliver them to Mehler and Estenkemper." If Metcalfe was not permitted to use the notes for the purpose of raising money, the appellants furnishing lumber to pay for the property instead of taking up the notes, why the necessity of such an agreement between them? The appellants are business men, and must at least be required to understand the effect and meaning of a contract evidencing an ordinary business transaction; and the fact that Metcalfe agreed to take up the notes evidences the existence of an agreement amounting to nothing more or less than that the credit of the appellants might be used in conjunction with Metcalfe to enable the latter to raise money; and in such a state of case, whether the note is negotiable or not, a bona fide holder for value is entitled to his judgment. Metcalfe's testimony is fully sustained by the agreement already referred to, and the proof is ample that Metcalfe was to use the notes, take them up at maturity, and then settle with the appellants for lumber purchased, in satisfaction of what might be owing on the property. The case of *Gano v. Finnell,* 13 B. Mon. 390, sustains this view of the question; and in fact it is not necessary to cite authority for the purpose of showing that, where a party permits his credit to be used in such a manner, he cannot make innocent parties suffer by reason of any default on the part of those in whom he has trusted.

It is certain that Ferguson had no notice of this agreement between these parties, and whether the note was discounted or not is

immaterial in determining the question involved. If, however, the facts, as insisted by counsel, do not authorize the conclusion reached, it is clear that the assignee of Metcalfe had the right to have the note discounted, and that it was discounted in good faith is clearly proven. Whether the maker of the note could by actual notice have prevented the discount does not arise, as the case is now presented. Conceding that the Marion County National Bank is but a representative of the commercial bank, or the same bank under a different name, still no notice was given that bank of the existence of a set-off intended to be asserted by appellants against the note in controversy. The parties to the note had placed it in the power of the assignee to discount the paper and made it negotiable and payable in bank for that purpose, and when he does negotiate or discount it, with the bank at Lebanon, is told that the discount is ineffectual because a circular was received by the assistant cashier of the bank giving notice of the defense intended to be made by the makers.

We know of no rule of law requiring the president and directors of a bank, or such officers as are intrusted with the duty of discounting paper, to make inquiry of those in subordinate positions to know if they have a knowledge of any infirmity in the paper offered. Neither the president nor cashier seems to have known of appellants' defense, and to make notice to an assistant cashier, or any other officer of a bank whose duty in a bank is foreign to that of discounting paper, notice to the bank, in a case like this, would be developing a new feature in the history of commercial law. The proof is that this assistant cashier had no voice in discounting paper, nor had he been entrusted with or permitted to discharge any such duty by the bank. The rule as laid down in Morse on Banks and Banking is: "If an officer is acting, speaking, or receiving information in matters which the ordinary usage of the banking business casts within the range of his functions, the bank is bound and affected thereby, as any other principal, by the act, declaration, or knowledge of the agent. * * * Each agent can only act in his own agency. In like manner, demand or notice can affect the bank only if it be made upon or given to the officer having charge of the subject-matter which the notice concerns. If it be given to one within whose sphere the business in question does not fall, the bank is not chargeable with it; neither answerable for negligence if it fails to act upon it." Morse on Banks and Banking (2d ed.) p. 89.

Any other rule than the one defined would require the principal

bank officers to consult with those in subordinate positions in all matters pertaining to the business of the bank, and particularly in regard to the character of paper that is constantly before the bank for discount.

The chief officers of the bank are doubtless required to consult those in minor positions with reference to matters coming within their sphere of action, and it would be unreasonable to place any other or greater obligation upon them in this regard. It therefore results that the paper was properly discounted, and for this reason, if for no other, the appellants must fail in their defense.

Judgment *affirmed.*

*Barrett & Brown, L. M. Dembitz, for appellants.*

*Barr, Goodloe & Humphrey, for appellee.*